Case Number 14-5174, Freedom Watch, Inc. Appellate v. National Security Agency at Elk. Mr. Klayman for the Appellate, Ms. Dorsey for the Appellees. Good morning, Judge Rogers, Judge Cato, and Judge Srinivasan. It's a pleasure to be here today. This is a case of the pinnacle of national importance. It deals with the integrity of the Freedom of Information Act. It deals with the integrity of what government agencies tell courts when they want to have cases dismissed on summary judgment. And it deals with an issue that I want to get to right now with regard to the emails that were not produced in all likelihood of Secretary Hillary Clinton at the time. This FOIA case involves Iran. This is an issue of extreme public interest. It deals with who leaked information three years ago, actually more than three years ago, with regard to Stuxnet, the cyber warfare against Iran's nuclear facilities, and Israeli-American war plans. We are not looking for classified information. We're looking for who leaked the information. How do you respond to the government's response to your request that information not previously? Yes, and I wanted to get to that. I want to give a little introduction, but this is the seminal issue. I agree with your response to the government's. I am, too, and that's what I was getting to. The government has conceded that this matter has to be remanded to the lower court. The reason it has to be remanded, if you look at the affidavits that were submitted that fraudulently induced summary judgment by the State Department, they did not search any of the records of the Secretary's office. They admit that they did not do that, yet they gave the impression to the courts that they did. Mr. Klink, let me just pursue Judge Rogers' question. If we agreed with the government for its request for limited remand, does that accomplish what you want here? Doesn't that give you everything you want? In part. Let me give you an example. How can an in part give you everything you want? What we don't want to see is other declarations come forth after another search is done. Right, but we can't control that now. They've said, the government has said, we're going to look at these. You want these e-mails searched. The government says we're going to search them. Is there anything that's not in the government's offered remand that should be there? Yes. Why don't you tell us that? Thank you for asking the question. Right. What we want to see are not affidavits. We want an opportunity for limited discovery of the people who signed the affidavits and the ones who will come forward next with a new search. I know, but suppose, just hypothetically, this is partially remanded, as the government suggests, and they produce thousands of e-mails, and you're totally satisfied. Given what's happened in this... It would be premature for this court to say anything more, wouldn't it? No, it would not, in light of what's happened, Your Honor. We have a history here, and we have moved to supplement the record of not telling the truth. But you have a district court. You sought discovery. The district court said, found, that there was no fraud, and it denied discovery. I mean, you've got a district court finding on discovery. You don't have any basis for arguing... The court did not know what we now know with regard to Mrs. Clinton's documents. But you'll find all that out on remand, and you can always renew your discovery request then. The reason that won't work, Your Honor, is that there's a history of not telling the truth, the freedom watching the American people here. The State Department issued three affidavits, which gave the impression to the court below, no fault of the court below, that all documents had been produced, but they weren't. In fact, they were on Mrs. Clinton's private e-mail server. So what I'm suggesting is... Do you have any evidence now that the government knew that was false when it filed its affidavits? Well, they admit in their motion for partial remand that they did not search the office of the secretary. Well, that's because they... Right. They did. I thought they were saying the opposite. I thought they said that they did search the office of the secretary, but then they neglected to include that within the fold of the affidavit. Well, that's convenient. Unfortunately, Your Honor, they did not submit another affidavit to that effect on the record. You have to take the face value... That's one of the reasons why they've asked for a remand, is to supplement their affidavit. We live in a different time, okay? I've been practicing law for 37 years. I'm sorry, I didn't mean to interrupt you. I've been practicing law for 37 years. I was a Justice Department lawyer. I handled some of these cases. You know, years ago, you could actually believe what the government was telling you. Today, you can't, and in this instance, clearly we can't. The government deceived, and I'm talking about the State Department, the judge. They withheld information from the judge. They came forward only after the information was disclosed publicly. They could have come forward months before with this and straightened this thing out, but now they want you to believe that they're going to go back and prepare correct affidavits from before. But that's why I ask you my question. Do you have any evidence that the government knew about this private server at the time it filed its affidavits in this case? That's why we need discovery, Your Honor, because the public reports, and we filed some of them as part of a supplement, show that the State Department knew about this, and they withheld the information from the American people and the court. You know, Hillary Clinton was intimately involved in this. There's a document which we attached to our briefs, which is written by high-level officials of the State Department, people communicating with the National Security Council and the White House, and it says, Sanger is writing a book on the Obama Administration's foreign policy we published this June. He's talked to scores of people, including the Secretary, Bill, Jake, Kirk, Bob Einhorn, and over at NSC and other agencies. We have been cooperating with him on this project, and the chats have all been on background with anything on the record to be approved by us. Hillary Clinton was intimately involved in this leak. The reason for the leaks were because the administration was trying to justify what was perceived to be weak action towards Iran on the nuclear program. This was right before the elections. They wanted to show they were doing something, and they wanted to... But I guess what I'm concerned about is you would have the opportunity on remand to make all of these arguments and to file documents as you wish in response to whatever the government does. But at this point, what we have is a district court decision, and now we have this government's proposal for this partial remand. And that's what we're trying to address. And I believe that that's what we should address, but we have to take it in the context of what we know at this time, Your Honor. But that's my point. The appellate court is looking at the record that's before it. In the district court, you can make a new record. But you're asking us to make findings. We move to supplement the record based upon the admissions of Mrs. Clinton herself. I know, and that's why I started out by saying, what is your response to the government's response to your motion? And they say, in effect, I don't want to go too far here, but you're right. We ought to go back in the district court so they can supplement the record there. And then you'll have a chance to respond. This is the highest court in the land, short of the Supreme Court. We are under a time constraint here. The American people deserve to have this information now. We're in delicate negotiations with Iran. By the time this goes back to the lower court and comes back, this administration will already be out of office, and the Iran thing will actually be a fait accompli in time. Your Honor, it does have the power, all of you, to remand with instructions. And here's what we're recommending. We're recommending that they do a proper search this time. We're recommending that we take limited discovery into the individuals who sign the affidavits, to start with Cheryl Walters, or anybody else who sends a new affidavit. Limited discovery at that time, to see if the adequate search was done, and whether information is being withheld. And why couldn't you ask the district court? I just don't understand that. If you look at the district court's opinion, and this is no disrespect to the lower court judge, he took what the State Department said hook, line, and sinker. We actually asked for discovery there. And it was reasonable under the circumstances. But he said, the district court found that you had no evidence of bad faith at that time. Well, you know why we didn't have evidence? Because heads I win, tails you lose, Judge The government does. That was a very disingenuous ruling by the lower court judge. Really? Why? Why? What was disingenuous about it? How are we to be able to get into the files of the State Department and have evidence? How can we do that? Well, maybe you have to show bad faith, right? That's what our case law says. Right now, we have The district court can deny discovery. The district court has a discretion in a FOIA case to deny discovery, unless there's evidence of bad faith. We have more than bad faith here, Your Honor. We have likely obstruction of justice. I was asking about the situation. You just told me that the district judge who decided this case acted disingenuously. That's what you just said. No, not disingenuously. That's what you said. You used the word disingenuous. What I'm saying is, I speak plainly, Your Honor. Right. I'm not trying to be disrespectful. I'm telling you, by saying that, we had to have information of the obstruction caused by Mrs. Clinton, when no one else had that knowledge, and we didn't have the ability to gain it. And therefore, he's going to grant summary judgment on that basis because we don't have information. That's why we asked for discovery, and that is disingenuous. Do you disagree about the status of this circuit's case law? That is, that the district court has discretion to deny discovery, absent evidence of bad faith. That's this circuit's law, right? It's not the absolute law. I can give you an example. Judge Royce Lambert, in a case that I handled for many years. Judge Tatel asked you about the law of this circuit. I just need to be clear with what we're talking about here. The law of this circuit, I'll cite the Apps decision, the American Physicians and Servants Act. That's not a FOIA case. That's in the briefs. It's not a FOIA case. Well, FOIA is part of FACA. FOIA is part of the Federal Advisory Committee Act, Your Honor. And what I'm asking for here, given what we now know, given what is a public record, given what this Court can take judicial notice of and take into the record, we know that Mrs. Clinton withheld information from the State Department. The State Department did not advise either the lower court or Your Honors of this subterfuge until it became public. They have acted in more than bad faith. In my opinion, this is an obstruction of justice. And I'm going to also ask you to order the lower court to remand and order the lower court to take control of those hard drives so they're able to be given to a forensic expert and inspected to see whether, indeed, documents can be retrieved. Judge Lambert did that in a case that uncovered the sale of seats on trade missions for large campaign contributions. And who was behind that? And that's a matter of the record. That was case number 960133 in the lower court, which came up to this Court on appeal. Mrs. Clinton was behind that, too. There's a pattern and practice here of not providing information to the American public under FOIA. That's one of the most famous FOIA cases in history. I'm also going to ask that this Court remand with instructions to look at the documents in camera for any redactions, including the document withheld on Glomar. I'm not trying to – Wait, wait, wait. Hold on. Wait, wait, wait. Glomar – does that have to do with the State Department? Yes, it did. Really? There's a document – I thought that was NSA and CIA. That's not before us. The only case that's before us is the State Department. That's it. They didn't assert – that's why I was a little surprised what the government said in its brief. I didn't think the Glomar issue was before us. Well, it is to the extent there are documents at State that we don't know of. The State Department didn't – it's NSA that asserted a Glomar response. No, you're right about that, Your Honor. You didn't appeal that. I'm talking about documents that may arise where they're going to claim Glomar on remand. So you want us to issue some sort of order, an assumption that the State Department might assert a Glomar response? I would like the lower court to review any documents in camera in light of – Well, you can ask the district court to do that. And here's the problem. You have the power to remand with specific instructions. You don't have to take exactly what the government is saying and say, I agree with that, and then send it back. You can send it back with specific instructions. We now have a public record of what likely amounts to an obstruction of justice by the State Department and Mrs. Clinton. So back to my question. The government has made a proposal, and Judge Tatel followed up by saying, are you satisfied with it? And you said no, that you wanted us to issue some instructions to the district court. And I want to know exactly what these instructions are. The instructions are to provide for a new search. The instructions are to allow for receipt of affidavits. And given the fact that the prior affidavits were misleading, if not false, to allow for limited discovery and to those people who signed those affidavits, to order that the hard drives of Mrs. Clinton, even though she says she's wiped them clean now after the fact, which in my view amounts to an obstruction of justice, be taken into court custody and sent to a forensic expert for analysis, that any documents that are identified be looked at in camera by the judge to make sure that improper redactions are not made or information is not being withheld under false claims of exemption. We have a pattern in practice here of falsifying information to the lower court. I'm not critical of the judge. I just made that one observation that to say that we should have information that we didn't have at that time is to look at it in the present-day context as something which can't obviously hold any weight. We now know. So my question is why wouldn't the district court be in the same position you're in? Namely, you will have brought new information to the district court's attention and you can ask the district court to reconsider rulings it made. That's all I want to be clear on. As opposed to us trying to guess what happens if there's a remand. The problem with that is FOIA was designed, Your Honor, to provide information in the public interest timely so it can be disseminated to the American people. We're a public interest group. But we know from the history of FOIA, as the cases in this court demonstrate, that FOIA responses are not always timely, unfortunately. So we're moving quickly here. And let's just deal with this case. You are moving quickly, and I commend that. But the lower court did not move quickly. This case is now almost three years old. By the time information comes back to this court in any kind of an appeal, if necessary, this will be long since this administration is concluded and long since any nuclear negotiations and other dealings with Iran have become a fait accompli. The American people deserve the information now. And what I'm saying is you have the power. You have the power to remand with specific instructions under the facts that we know at this time that are a matter of public record that Mrs. Clinton has admitted to, that the hard drive should be taken into custody. There should be limited discovery into who signs these affidavits because the prior affidavits were plainly false and intentionally false. They made an effort not to search. Well, you made all these accusations, but Judge Tatel asked you the question, what evidence did you have that these clients knew at the time? And isn't that the type of inquiry that the district court would have to make? We can't make that. And you can renew all those matters before the district court in light of what the government has said here. What I'm saying, Your Honor, is that we have, as a matter of public record, the motion of supplement is pending. You could also take judicial notice of it. It is known that the State Department intentionally looked the other way, did not search Mrs. Clinton's files, much as occurred with Ron Brown and the Commerce Department back with Judge Landworth. All right, Mr. Clayman, let's talk. Can we hear from the government? Yes, may I have two minutes on a reply, if I may? Thank you. Sure. Good morning, Your Honors. May it please the Court, Catherine Dorsey on behalf of Defendants at Police, and with me at counsel table are Douglas Letter and Matthew Collette. Can I ask you one question? This document that counsel for appellant attached to his brief, that's from Wendy Sherman to Michael Hammer, was this part of the record before the district court? It was not part of the record, Your Honor, I don't believe, but it was one of the documents that was released to plaintiff as part of the FOIA request. All right, thank you. Your Honors, as we have suggested in our filing yesterday, a partial remand here we think would be appropriate in order to give the State Department an opportunity to search the former secretary's emails that have been provided to the State Department, and also to ensure that the State Department's declarations about the searches that were conducted in this case are complete. Well, on your first point, Ms. Dorsey, you say in your motion, in your filing, that the purpose of this remand is to determine whether any of these emails are responsive, right? That's what you say. That is correct, Your Honor. But why would the court, or why would we or the court, accept the idea that your two-step process here, that is that you say it's more efficient for the State Department to review all the emails and then publicize them, and then you'll look to see whether they're any responsive to the FOIA request, right? Correct, Your Honor. Why don't you just, I mean, Mr. Klayman has a pending FOIA request. Doesn't that FOIA request have priority, and your document essentially says there may be more responsive documents, and under that circumstance, isn't it the State Department's obligation to search to find documents that are responsive to this FOIA request? Well, a couple of responses, Your Honor. One, the State Department, because as we indicated in our motion, that there are response, there has been a lot of interest, obviously, generated by the emails the State Department has committed. Yes, but Mr. Klayman has, unlike the public, he has a pending FOIA request, and FOIA requests impose a specific obligation on the government to search for responsive documents. I would think the proper approach under the Department's obligations would be the other way around, that is to deal with pending FOIA requests first. Well, but I think, Your Honor, it's just the point that the State Department needs to be able to process those emails, and then once they have processed those, then they can look into this case to determine which of those are responsive. But given the narrow, the way this case is narrowed down to basically one department, namely State, and one issue, namely David Sanger emails, and the fact that these are all emails, there's no paper, we're just talking about emails, isn't it a relatively easy matter to search the documents for the name David Sanger? That's all you have to do. They're not the documents, the emails. That's all that has to be done, and you'll either turn up emails or you won't. And we could certainly, I guess, consult with the State Department whether that would be possible to do that first. I'd, of course, have to consult with my client about whether that would be a possibility. I mean, in this case, also, the search plaintiff here has never even ---- Let me tell you, in other words, this is, you go ahead, I'm sorry. It seems like it has to be a possibility because all we're talking about is, all Judge Tatum is talking about is sequencing, right? So what you're saying is that search would happen after the initial phase, which would be to publicize everything that would be publicized. But the second phase would be to do exactly what's being talked about here, which is to do a search that uses the terms that are responsive to the FOIA request. So it seems like, by your own forecast of what should happen, you're presupposing that the second phase can happen. The question is just whether that second phase should happen first. That's correct, Your Honor. But I guess what I'd point out is that, in this case, plaintiff has never, in his challenge to the State Department's search, he has never even indicated that there were other offices or other keyword terms that the State Department should have used in its search. And so, in this case, we are voluntarily offering to go back and search those e-mails, the former Secretary's e-mails, in case there might be something responsive. But, again ---- But don't you, you say voluntary. It seems to me that I'm not sure this is really voluntary, given what you filed. You've acknowledged that the e-mails exist and that there might be, and that they need to be searched. And under FOIA, I mean, I think that's, you know, that's a responsible way for the agency to behave. In fact, it's quite analogous to what happened earlier in this case, when State, on its own, came back to the court and said, oops, we forgot, we neglected to search, what was it, the head office of public affairs. Wasn't that what it was? The front office. The front office of public affairs. I mean, that was a very responsible thing for State to tell the court. And you asked for 60 days to do that and did it. And isn't this exactly the same situation? You've now discovered, not you, but your client, has now discovered, just as you did then, that there may be more documents that need to be searched. And just as then your obligation was to search, you have the same obligation now. And whatever State wants to do with respect to broader public interest is up to State. But here we have a FOIA case with obligations under FOIA. That is correct, Your Honor. Now that these documents have been provided to the State Department, they are agency records. But you're right that it is similar to the previous circumstance, which is exactly why we are suggesting that a remand would be appropriate. And I'm only focusing on the sentence in your filing that says it would be more efficient. It says your proposed suggestion is that you look at all the documents and make the public would be, quote, more efficient than reviewing documents piecemeal in response to specific FOIA requests. But your legal obligation in this case is to respond to specific FOIA requests. And I don't see anything in this that suggests why that would be more efficient. In fact, from the perspective of FOIA, it seems to me that it would be less efficient since all you're looking for is one name, David Sanger. And, Your Honor, I think we can do that. Of course, I'd have to consult with the State Department, but I don't think that would be a problem. But, I mean, in terms of that here we're reviewing summary judgment determination for the State, you know, at the time, these weren't part of the agents that you, former Clintons, emails weren't part of the state record. So at the time, you know, we had conducted the search. And I take it there's other FOIA requests that are implicated by the gaining of knowledge that there's this additional email catch that needs to be sent. My understanding is there are additional FOIA requests, which is why the State Department has indicated that it would be faster to process the emails as a whole and then they would turn to individual FOIA cases. Because if the documents are already public, then individuals would have access to them. The other thing that I wanted to ask you about is there's nothing in your filing about how much time this will take. And that I don't have an answer to, Your Honor. I would have to consult with the State Department about the timing on that. When I read your filing, I thought part of your concern might be that maybe some of these documents have to be reviewed in terms of whether they're classified, things like that. Exemptions, classified. And I understand sort of the approach, but is your position today that – I guess I need to understand what your position today is. You say you'll consult with your clients, but from the court's point of view, don't we need to know whether – I suppose, tell me what you think we need to know in terms of the government's response to this email, this FOIA request. Well, I think in the remand, I mean, we have indicated, you know, if this court does send it back, I think this court can decide the other issues in the case and then remand on the search issue. And the timing will be what it is there, and all the issues can be litigated there before the district court. So I'm not sure how critical the timing of the State Department – Well, what I'm thinking of, and I just know this from reading the newspaper, and maybe it's not accurate information, but the Inspector General took three years to look at how emails were being handled at the State Department and issued a report. I guess that's the sort of sense of where you want to review everything first. And I just – I don't have an answer to that without talking. I also have the impression that there was another – a filing in another FOIA case where the Department proposed a similar process – the same process that you're proposing now, and I thought that the government's filing in that case said that the process would take several months. Is that – That's possible. I don't – I'm not aware of a timing statement that's been made on that. I could certainly check with the State Department and send a letter back to the court if that would be helpful. Well, at least your filing suggests that you do know about additional searches that have been made which are not fully described in the declarations that have been submitted to date. So presumably those could be updated. Yes, that's why – another reason we thought the remand would be appropriate to send that back to this court so we can fully explain the additional search that was done. But I thought as to the – am I wrong in this impression that with respect to that additional search, that was already conducted? Right. Presumably there were no responsive documents found beyond that which has already been disclosed or else you would have disclosed those. That is my understanding, Your Honor. But again, that's why we think a remand would be appropriate to just make sure the declaration is fully complete. On the searches that were conducted. Yes. But not on the documents that were – the catch of documents that were disclosed based on the searches that have already been conducted is complete. It's just that you're describing the searches that were conducted. That is my understanding, Your Honor. Okay. I wasn't clear about that either. Yes. So I have a question. This – in all honesty, this question comes from a computer Luddite, okay, so maybe you can help me. Suppose someone in one of these three offices sent an email to Secretary Clinton and it went to her – to the private server. Wouldn't – that would have shown up in your search, wouldn't it, because it was sent from a government computer? I'm sorry, which three offices? The three offices that you searched. Searched. The original through the central file? Yes, the original. I'm looking back. I just want to understand how this works. So if an assistant secretary sitting in her office sends the secretary an email, not to her official email address but to her private email address, wouldn't that have shown up in your – in the State Department search because it was sent from a government computer? That is my understanding, as long as the – whatever file was searched included email documents. Correct. Now, so – But let me just say that's what the Inspector General report questions, as to whether department employees were saving their emails as they were supposed to. No, I agree. If they weren't saved, it wouldn't be there. But if it was, it would be there, correct? That is my understanding, yes, Your Honor. And the same is true of the opposite. Correct. So the only emails that wouldn't appear are emails sent, like if an assistant secretary decided to send the secretary of state an email from her own private Gmail account to the secretary's private account. That wouldn't show up anywhere, right? That is also correct in my understanding, Your Honor. So the only – I realize that – I'm just curious. This is nothing but curiosity, I assure you. So the only – notwithstanding the disclosure of all these emails to a private server, the only issue is still the issue that's been around all along, which is were public – were emails on government computers preserved? That's it. Right? I believe so, Your Honor. Yeah. Okay. Thanks. Your Honor, I see I'm running out of time. I just would like to touch on the issues with the other agencies briefly. In this case, both the NSA and the CIA had issued Glomar responses to the FOIA request, which the district court had dismissed plaintiff's challenge to those Glomar responses. So why is that before us here? That's – the only thing before us is state. I don't believe that's correct, Your Honor, because plaintiff here challenged in his notice of appeal all the other included rulings, which seemed to suggest, and in his brief, adverted to the fact that he was appealing. So you think all of the – you think the district court's earlier judgments before us? That's what the notice of appeal purported. But do you believe that that's correct, just because he put it in his notice? He didn't appeal. Well, he did. The previous summer. He didn't appeal Judge Wilkins' summer judgment order, correct? He raised no argument on appeal about the dismissal of the NSA and the CIA, the challenges. No, but he didn't appeal that, did he? Well, I guess it depends on whether the all-inclusive rulings, that language he included in his notice of appeal. But the government thinks – I just want to be sure you may be right. The government thinks that that's enough to bring up the previous case also? Is that your theory? I don't want to take a position on whether it is or not, Your Honor, but in the event the court should determine – I see this, right? I see, okay. Exactly right, Your Honor. Okay, I got it. In any event, plaintiff raises no argument on appeal as to the dismissal of the challenges against NSA or CIA. And again, with the DOD's LOMAR response, we believe that the district court correctly granted summary judgment on that grounds too as well. If the court has no further questions. Thank you. Thank you. Counsel for appellant. Thank you, Your Honor. Timing is very important. Judge Tatel touched on that and you all did. Because the modus operandi here with the procedure that's being suggested, which I would submit is calculated, is to have this case drag out well into the future beyond the next elections. This State Department is very loyal to Mrs. Clinton. I'm sure that most of the people that are involved would like to see her elected president. The American people need to know whether she produced the information she was required to produce and whether she leaked classified information to David Sanger before that time. That's a matter of public interest. I don't seek to influence any elections, but the American people need to know that now. And this procedure is designed to drag it out until after the 2016 elections. And that's why you need, in all due respect, to be very firm with the lower court and say, here's how it should proceed. With regard to the search, keyword searches are not enough. It's that there can be references in those documents to someone, to Mr. Sanger, without actually using his name. So it's kind of like see no evil, hear no evil, do no evil. We're not going to look for anything except unless Sanger's name is used. Well, that's why all the documents need to be reviewed. And they need to be reviewed in camera by the lower court judge. And the remand should make that clear as well. In their brief, they argue you didn't make any challenge in the district court. That's incorrect. We did make challenges to it. In fact, it was an incorrect statement that we didn't put the document in the record at the lower court, but I read you that Mrs. Clinton was involved in talking to David Sanger. No, but did you challenge the nature of the keyword search? It didn't sound like you'd ever challenged the particular search terms. We did in the context of asking the court for discovery because we did not feel that that was adequate, the way the search was done. So, yes, generally speaking, we did challenge that. I thought your argument was that keyword searches generally are not adequate, not that assuming keyword searches are okay, the particular terms used here were flawed. Well, yes, that was our argument. And if you look at the documents that were produced. And as to that, can I just ask, how are you supposed to search online materials other than using keywords? You look at the actual documents themselves. And how would you define the field of documents you're supposed to look at? Every single email that anybody in the state has ever sent on any subject? There were only, no, Your Honor, there were only 200 and some pages of documents. I'm sorry, I didn't mean to interrupt you. So you have to narrow the field somehow, and I take it that the way you narrow the field is by identifying terms that would then allow you to look at a particular subject. Well, you can start with that. But there aren't that many documents with regard to this issue, presumably because we're dealing here with leaking information to David Sanger of the New York Times. How many documents can there be? Of the documents that were produced, there was only 200 and some pages. That's not hardly anything at all. This is not a great burden, and Judge Tatel hit the nail on the head. Our FOIA request should be dealt with first. This is a matter of tremendous public interest. This is a matter, as we stand here today, negotiators are trying to hammer out a deal with Iran. The leaks here were designed to have this administration show right before an election that they were being tough on Iran. Most people, even Democrats, believe that they're not being tough on Iran, that they're rolling over. The American people need to know why these leaks occurred. And, you know, it's interesting. Edward Snowden, and that's another case that we have in front of Your Honors today, the NSA case that we got an injunction on, a preliminary injunction. It's on appeal. Someone like Snowden had to leave the country, and he was a whistleblower, and now he's subject to potential prosecution, likely prosecution. I've lost the relevance to this. The relevance is that the American people need to know. If they're high officials like Mrs. Clinton and the people around her, like Cheryl Mills, people in the National Security Council, are leaking information and we're burning this guy at the stake named Snowden, does that mean that the higher-ups in this town get off scot-free? And the people that are actually trying to do the right thing get burned at the stake? That can't be what this government's about, and it can't be what this court allows. And that's why you have to exercise a firm hand here, nonpartisan firm hand, with regard to how this administration has acted. And this Justice Department here, and I'm a former Justice Department lawyer, has played a role in covering up information of this administration. I know, but we want to be careful, and you would want others to be careful when you were a Justice Department lawyer before you make accusations, and if you have anything further. Well, they're not accusations, Your Honor. By way of legal argument. This attorney general of this administration has been held in contempt of court by Congress. By legal argument relevant to this case. I believe it is, Your Honor, and I'm not taking this out of context. It's a reality that Mr. Holder has been held in contempt of Congress for providing false information to Congress and withholding documents. He runs the Justice Department. Thank you, Your Honor. Thank you. We will take the case under advisement.
judges: Rogers, Tatel, Srinivasan